IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RASHID A. HOLBROOK, *
Plaintiff,

v. * CIVIL ACTION NO. WDQ-10-2566

KAREN DEAN, et al., *
Defendants.

***

MEMORANDUM

Pending is Defendants Godion Atmafu, Wondaye Dessema, Damon Fayall, Helain Gear, Anna Hammond, John Moss, Collin Ottey, Getachew Teffera, and Isias Tessema's Motion to Dismiss or for Summary Judgment.[1] ECF No. 41. The Plaintiff has not filed a response.[2] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

Holbrook, a prisoner, alleges he has been denied medical care for an eraser he stuck in his ear which has remained embedded for more than six years. ECF Nos. 1 & 6. He also alleges he has been denied adequate medical care for an infection on his chin which has not healed properly. *Id*.

The uncontroverted medical records and Affidavits of Andrew Moultrie, M.D. and Getachew Teffera, M.D. reveal that sometime in 2004, Holbrook inserted a pencil eraser into his ear to block out ambient noise in the Wicomico County Detention Center where he was detained. He

[1] Defendants Seblu Yohannes, Mr. Whauler, and Ms. Mercy have not been served with the Complaint. For the reasons that follow, even if they had properly been served, Plaintiff's Complaint against them would be subject to dismissal or summary judgment.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the Plaintiff was notified that the Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 42. The Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id.*

subsequently complained he was in pain and had difficulty hearing out of his left ear. ECF No. 41, Ex. 1; Ex. 2, at 2, 5-12, 17-19, 25-30, 33-34; Ex 3.

In 2003, prior to inserting the eraser into his ear, Holbrook suffered a gunshot wound to the face. He underwent numerous reconstructive surgical procedures to repair his facial bones and skull as an inpatient in the Shock Trauma Unit of the University of Maryland Medical System ("UMMS"). Holbrook underwent a decompressive craniectomy wherein a portion of the skull was removed to relieve the pressure caused by brain swelling after the injury, and a cranioplasty which was performed in order to replace the portion of his skull removed during the craniectomy. He later developed an infection of the bone graft used in the cranioplasty and the graft had to be removed. *Id.* at 1, 3-4, 15.[3]

While incarcerated at the Maryland House of Correction ("MHC"), from 2005 to February, 2007, Holbrook was under the care of Dr. Atmafu, Dr. Teffera, and Physician's Assistant Gear. ECF No. 41, Ex. 2. Dr. Atmafu last treated Holbrook on October 11, 2006, following reconstructive plastic surgery to his face. Atmafu noted no complaints about Holbrook's left ear and did not provide any treatment to his ear. He discharged him to general population. *Id.* Dr. Teffera last treated Holbrook on February 16, 2007, for headaches and insomnia. *Id.*, Ex. 3. Holbrook did not complain to Teffera regarding his ear and as such Teffera did not provide any treatment for same. Helaine Gear last treated Holbrook on February 23, 2007, for folliculitis on his chin. Holbrook did not complain to Gear about his left ear. *Id.*

Holbrook was incarcerated at the Western Correctional Institution ("WCI") from 2006 to 2009. On August 15, 2006, due to his complaint of ear pain, he was provided a cerumen protocol to both of his ears in order to remove excessive ear wax. *Id.*, Ex. 2 at 104. On February 7, 2008, the

[3] Holbrook subsequently underwent additional surgeries during his incarceration. On January 30, 2008, surgery was performed to temporarily repair a deformity of his skull. On February 2, 2010, surgery was performed to repair the bones around his left eye and permanently repair the skull deformity. *Id.* at 15-16, 20-23.

Plaintiff was evaluated by Hammond. He presented speaking rapidly and in an agitated state. He complained, among other things, about the eraser in his ear. Hammond referred Holbrook to psychiatry and recommended a watch for suicidal gestures. Hammond next examined Holbrook on March 12, 2008. She noted Holbrook was awaiting removal of ingrown hairs on his chin. *Id*. at 289, 559. On March 31, 2008, the Plaintiff again complained of a clogged left ear. He was examined on April 2, 2008, but no eraser was seen in his ear. *Id*. at 591.

Holbrook submitted sick call slips on December 10, 2008, December 11, 2008, and December 13, 2008, demanding to see a doctor regarding the eraser he put in his left ear. *Id*. at 575-77. He was referred to Dr. Tessema, but instead was seen by Dr. Ottey on December 23, 2008. Dr. Ottey unsuccessfully attempted to remove the eraser on December 23, 2008. *Id*., Ex. 1 & Ex. 2 at 575-77, 385-86, 550.

Dr. Tessema did not treat Holbrook for complaints relating to his chin or left ear. Dr. Tessema did, however, write various orders concerning Holbrook's care including a request for a plastic surgery consultation regarding maxillofacial prosthetic reconstruction. *Id*., Ex. 1; Ex. 2 at 107, 109, 381-83, 387-88, 402-03, 554; Ex. 3.

Holbrook has been incarcerated at the Jessup Correctional Institution ("JCI") since 2009. From November 2 to November 6, 2009, Physician's Assistant Moss ordered Holbrook's complaint of left ear pain to be treated with water drops. *Id*., Ex. 2 at 688.

On February 16, 2010, P.A. Deressa examined Holbrook during infirmary rounds and found impacted cerumen. She ordered the application of debrox drops to the Plaintiff's ears three times daily for seven days. On February 23, 2010, Deressa noted a foreign body in the Plaintiff's left ear during examination as well as drainage from his mental crease-the area between his lower lip and

chin. She further noted that hardware removal and an otolaryngologist ("ENT") consult would be required in order to remove the foreign body. *Id*. at 503.

On February 23, 2010, the Plaintiff was admitted to the emergency room at UMMS for postoperative facial swelling. He had undergone a cranioplasty, removal of deep hardware from the left periorbital region, cranium, and left cranial prosthetic plate, and secondary revision of left orbital craniofacial reconstruction on February 1, 2010. A CT scan revealed no signs of surgical complication or infection in his face. *Id*., Ex. 1.

The Plaintiff submitted a sick call slip on March 22, 2010, complaining his chin was itching and bleeding. He failed to appear for his nurse visit on March 25 and 29, 2010. On March 2010, he informed the nurse "I am cool. I don't have any problem." *Id*., Ex. 2 at 484.

Holbrook was seen for a follow up visit with a plastic surgeon at UMMS on April 29, 2010. The surgeon observed that in order to have the foreign body removed from Holbrook's ear, the hardware-the plates and related material implanted in his face and skull during his various reconstructive surgeries-- would need to be removed. *Id*., Ex. 1; Ex. 2 at 24, 45-46.

On June 16, 2010, John Moss, P.A. requested a consultation from Wexford Health Services, Inc.,[4] with an ENT to evaluate the possibility of removing the eraser from the ear. Wexford did not approve the consultation. *Id*., Ex. 1. Moss advised Holbrook that in order for the foreign body to be removed from his ear the hardware would need to be removed and he would need a consult with an ENT. *Id*. at 25-26, 29, 31-32.

[4] Wexford, as the utilization review contractor for the State of Maryland, reviews and approves all requests by on-site and off-site consultants for certain medical devises and tests. *Id*.

Holbrook complained of an itchy hole in his chin on October 15, 2010. The plastic surgeon believed the loose hardware in Holbrook's jaw was causing the drainage in his mental crease and recommended removing the plate. *Id.*, Ex.1, Ex. 2 at 452-53.

On February 15, 2011, Correctional Medical Services Inc. received the plastic surgeon's final report. The surgeon noted that one of the plates in Holbrook's jaw was mal-positioned and a screw in the plate appeared loose. The surgeon recommended a revision of the cranioplasty and removal of the mandibular plate as well as evaluation by an ENT to remove the foreign body in Holbrook's left ear. *Id.*, Ex. 1. On February 16, 2011, Dr. Moultrie requested the ENT consultation from Wexford as well as the reconstructive surgery. *Id.*, Ex. 1, Ex. 2 at 319-22. The ENT consult was approved, Holbrook was evaluated by an ENT on March 29, 2011, and the eraser removed from his left ear. *Id.*, Ex. 2 at 454.

**Standard of Review**

A. Motion to Dismiss

The purpose of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's Complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require the Defendant to establish "beyond doubt" that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint. *Id.* at 555-56. Both *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that, in order to survive a Motion to Dismiss under Rule 12(b)(6), a Complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for

'all civil actions'. . ." (citation omitted)); *Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B. Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639,

644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks and citations omitted).

**Discussion**

A. Statute of Limitations

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (*citing Owens v. Okure,* 488 U.S. 235, 249-250 (1989)); *Wilson v. Garcia,* 471 U.S. 261, 279-280, (1985). In Maryland the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code, Cts. & Jud. Proc. § 5-101. Holbrook filed the instant Complaint on September 16, 2010. ECF No. 1. The Complaint against Defendants Dr. Atmafu, Dr. Teffera, and Physician's Assistant Gear shall be dismissed. These Defendants treated Plaintiff while he was incarcerated at MHC. The last possible date of treatment for any of these Defendants was February, 2007, over three years prior to the institution of this case. Thereafter Holbrook was transferred from MHC. As such, his Complaint as to Atmafu, Teffera and Gear shall be dismissed.

B. Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, the Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical

need requires proof that, objectively, the Plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (*quoting Farmer,* 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the Defendant actually knew at the time. *See Brown v. Harris* 240 F.3d 383 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff's allegations that he was not provided necessary medical treatment for the eraser he pushed into his ear and an infection on his chin is belied by the medical records. Since placing the

eraser in his ear in 2004, he complained of a clogged left ear, occasional pain and difficulty hearing. As previously noted, in 2003, Holbrook suffered a gunshot wound to his face. He underwent several reconstructive surgeries of his face and skull at UMMS in the following years. As a result of the hardware put in place to reconstruct his skull and face it was not possible for the eraser to be removed until 2011. *Id.*, Ex. 1, Ex. 2 at 454. Additionally, the hardware in Holbrook's jaw caused some of the drainage which led to infection of his chin. The revision of his plastic surgery was intended to alleviate this problem. *Id.*, Ex. 1.

The Plaintiff's disagreement with a course of treatment does not provide the framework for a federal civil rights Complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975) (no cruel and unusual punishment when the Plaintiff received constant medical supervision and treatment). In granting summary judgment to the Defendants, the Court does not imply that the Plaintiff is not entitled to medical treatment for his serious conditions. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849. There are no exceptional circumstances in this case. "[A]n inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle*, 429 U.S. at 105. Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

Here, at worst, the Defendants inadvertently failed to find the eraser while constantly treating Holbrook for his other maladies and attempting to treat his blocked-ear symptoms. The Defendants

even sought surgery for the ear, but were initially denied by a third party. Their actions do not rise to a constitutional level. Accordingly, the Defendants are entitled to summary judgment as to the Plaintiff's Eighth Amendment claim.

**Conclusion**

For the aforementioned reasons, the Defendants' Motion, construed as a motion to dismiss by Atmafu, Gear, and Teffera, and for summary judgment by the other Defendants, shall be granted. The Complaint will also be dismissed against the Defendants who were not served. A separate Order follows.

Date: 4/11/12

William D. Quarles, Jr.
United States District Judge